FILED
APR 24 2006
U.S. COURT OF FEDERAL CLAIMS

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **CARL W.LANDERS** | ) | |
| | ) | |
| **PLAINTIFF** | ) NO. | 06-314 C |
| **V.** | ) | |
| | ) | |
| **UNITED STATES GOVERNMENT** | ) | |

---

**PLAINTIFF, CARL W.LANDERS, alleges:**

1. PLAINTIFF brings this complaint against the United States Government. This Court has jurisdiction under Title 28 1346(a) (2)

2. The matter in controversy exceeds, exclusive of interest and costs, the sum of seventy-five thousand dollars.

3. PLAINTIFF is entitled to monetary compensation under Title 28 §2414 Payment of Judgments Agreements and Compromise Settlements which provides: ". . .Except as otherwise provided by law, compromise settlements of claims referred to the Attorney General for defense of imminent litigation or suits against the United States, or against its agencies or officials upon obligations or liabilities of the United States, made by the Attorney General or any person authorized by him, shall be settled and paid in a manner similar to judgments in like causes and appropriations or funds available for the payment of such

judgments are hereby made available for the payment of such compromise.

4. On or about October 1991 PLAINTIFF, Carl Landers, a United States Veteran, brought suit in the United States District Court, under the Federal Torts Claim Act (FTCA) against the United States Government (DEFENDANT) and the Veterans Hospital (VA) located at 3350 La Jolla Village Drive, La Jolla, California 92134-5000. The basis of this lawsuit was for allegedly negligent medical care in the diagnosis and treatment of Chron's disease received at the VA medical facility. PLAINITFF was awarded disability benefits under U.S.C.A. §1151 for nonservice connected Crohn's disease as a result of avascular necrosis of his hips and due to VA steroid treatments.

5. On or about March 29, 1994 PLAINTIFF stipulated to a Compromise Settlement Agreement with the United States Government at the City of San Diego, San Diego County, California. (Exhibit A) The Compromise Settlement Agreement was drafted by the DEFENDANT by and through the United States Attorney, Nita Stormes, and Alan B. Bersin, the United States Attorney General, a copy of the Stipulation for Compromise Settlement and a letter containing the offer in settlement of the case, dated March 9, 1994,and March 15, 1994 ( Exhibit B).

6. PLAINTIFF'S complaint concerns a continuing breach of a contract of the unfulfilled part of the Compromise Agreement. This continuing breach of contract is continuing, since September 1995 to the present time. The Compromise Settlement Agreement imposed a continuing contractual duty on the DEFENDANT to make the payments as agreed. San Carlos irrigation and Drainage District v. United States 23 Cl Ct 276(1991).

7. The continuing breach of a Compromise Agreement involves the sum of $600 per month that is required to be paid by DEFENDANT to PLAINTIFF ,commencing one month after funding of the settlement. The Compromise Settlement Agreement further provided that these payments "shall be payable for life, and are guaranteed " for a period of twenty years certain, and shall be payable regardless of survivorship. These provisions contain language which could be interpreted as a mandatory recovery from the DEFENDANT. Plaintiff contends that the right to recoupment as demanded by the Veterans Administration should be waived.

8. Further, the agreement provided that: "As the structured component of this settlement, the United States shall purchase from First Colony Life Insurance Company, an annuity that will result in a monthly payment of Six Hundred Dollars ($600.00) per month, commencing one month

after funding of the settlement. These payments shall be payable for life, and are guaranteed for a period of twenty years certain, and shall be payable regardless of survivorship.

9. PLAINTIFF contends that (1) a valid contract existed between the DEFENDANT and the PLAINTIFF (2) DEFENDANT had a continuing obligation or duty arising out of the Compromise and Settlement Agreement. (4) damages were caused by the continuing partial breach by the DEFENDANT.

10. PLAINTIFF further contends that the DEFENDANT'S continuing breach of contract occurs by allowing the VA to continue to recoup the $600 per month and/or funds in the amount of $195,000. On November 20, 1997 the Board of Veterans' Appeals , Washington, D.C. determined that the law requires that the full amount of $195,000 should be recouped from the Plaintiff's award of §1151 disability benefits. PLAINTIFF was never told by DEFENDANTS before or during the negotiations of the Compromise Agreement that the $195,000 could be recouped by the VA. In fact a letter was written to PLAINTIFF'S Attorney indicating that PLAINTIFF would receive his VA disability payment ( see Letter dated March 9, 1994 in Exhibit B)

11. PLAINTIFF has no money and has proceeded in this case in Forma Pauperis. On or about July, 1995 PLAINTIFF

received a letter from the Veterans Affairs Department (VA) that the Stipulation for Compromise that he entered into in March 1994, allowed it to recoup the amount of the settlement. Therefore according to 38 CFR 3.800 (a)(2) the Veteran's Department has a right to recoupment of the $195,000 under the PLAINTIFF'S COMPROMISE AND SETTLEMENT which he entered into in March, 1994.

12. In September 1995 the Veterans Administration (VA) commenced withholding certain amounts including ($600) from the PLAINTIFF'S disability entitlement. This withholding of the $600 and or funds earmarked as part of $195,000 of the Compromise Settlement Agreement by the VA is continuing to the present time. The DEFENDANT is therefore in continuing breach of contract, in failing to pay to PLAINTIFF the $600 as agreed under the Compromise Settlement Agreement and failing to disclose that the VA had a right to recoupment of the entire settlement amount of $195,000.

13. PLAINTIFF has been in failing health and has acted reasonably diligent in protecting his interest under the contract. When the VA began recouping money from the settlement funds, PLAINTIFF contacted a Representative from, the American Legion, Representative W.D. Oberlander (Obie) who reviewed PLAINTIFF'S records and told PLAINTIFF that the VA had a right to recoup the money from

PLAINTIFF"S settlement with the DEFENDANT, because he had signed the agreement in 1994.

PLAINTIFF has relied on the terms of the agreement, because the money had been expressly "guaranteed" by DEFENDANT. Mr. Oberlander the Representative of the American Legion advised PLAINTIFF that if PLAINTIFF"S Attorney reopened the case, PLAINTIFF would go further in debt. About this time, PLAINTIFF also contacted the Regional Office of the VA in San Diego and was told that the amount of $195,000 was subject to recoupment under 38 CFR 3.800 (a)(2). PLAINTIFF has been without counsel from about April 1994 to about October, 2005. Therefore, he has had to depend of the help given to him by members of the Veterans Administration an d others who would help without charging a fee for their service.

14. PLAINTIFF sought the help of the Veterans Administration from 1995 (Exhibit C) to present time, by making appeals to The Veterans Board of Appeals, Washington, D.C., and November 20 1997 (Exhibit E). Department of Veterans Affairs, VA Regional Office, on about 1/27/1997 (Exhibit D) ; The American Legion on or about 12/8/1997 and again on or about October 2003, Department of Veterans Affairs, Regional Office, Waco, Texas on or about October 24, 2003. ( Exhibit G.).

PLAINTIFF has requested a waiver of the alleged indebtedness to the Department of Veterans Affairs continuously.

15. On or about June 18, 2004 The General Counsel of the Department of Veterans Affairs Washington D.C., sent a letter to Senator Kay Bailey Hutchinson to respond to Plaintiff's inquiries. (Exhibit F)

16. In November, 1997,Plaintiff was represented by the American Legion, Attorney for the Board was Attorney D.P. Dean. The Board determined the settlement amount of $195,000 must be recouped from the award of 38 U.S.C.A §1151 (West 1991) disability benefits;38 C.F.R.3.800 (a)(2)(1996). A copy of the Board's determination is dated November 20, 1997 and attached hereto as Exhibit E.

17. PLAINTIFF has personally filed letters of disagreements of the recoupment from 1995 to the present time. PLAINTIFF was told by the Representative of the American Legion that once the recoupment began it had to continue until the recoupment was completed.

18. In September, October 24, 2003, PLAINTIFF requested a waiver of the money being recouped from the Department of Veteran's Affairs and another letter was sent to the VA requesting a waiver March 24, 2005.

19. On or about June, 2004 General Counsel for the Department of Veteran's Affairs also sought help from the Honorable Kay Bailey Hutchinson, United States Senator. See Letter from General Counsel, Tim S. McClain.( Exhibit F)

20. DEFENDANT is entitled to recover for a continuing breach of contract, because the Compromise Settlement Agreement explicitly states that the amounts due to PLAINTIFF were "guaranteed" and "shall be payable" to PLAINTIFF. This language is mandatory. Contractual language is given its actual and customary meaning. American Science & Engineering v. United States 229 Ct. Cl. 47, 57.

21. It is PLAINTIFF'S contention that the VA should be precluded from withholding the amount of the $195,000 in light of the expressed and mandatory language used by the DEFENDANT in the Compromise Settlement Agreement.

22. It is clear from a letter dated March 9, 1994, sent to PLAINTIFF's Attorney by the United States Attorney, Alan B. Bersin, that it was the contractual intent of the United States Government's offer sent to PLAINTIFF that PLAINTIFF would benefit from the entire $195,000. Please note the statement made by the Attorney General concerning the total monthly income that PLAINTIFF would have after the settlement, "the monthly income (tax free) of $600 ($7,200

per year) when added to his Social Security and VA disability income brings Mr. Landers to an annual income level of almost $17,000, he would end up with a substantial sum even after attorneys fees and costs have been deducted."(letter dated March 9, 1994 in Exhibit B)

22. PLAINTIFF has performed all conditions, covenants, and promises required on his part to be performed in accordance with the terms and conditions of the contract.

23. As stated herein the DEFENDANT has continued since on or about September , 1995 and is at the present time is in a continuing breach of the contract by not paying PLAINTIFF as agreed and by permitting its agency, the Department of Veterans Affairs, to withhold monies due to PLAINTIIF under the Compromise Settlement Agreement,

24. As a result of DEFENDANT'S breach of contract, PLAINTIFF has incurred damages in the amounts which the VA has recouped of the $195,000.PLAINTIFF is aware of $90,000 cash settlement paid for cost and attorney fees and is not seeking to recover that amount from the DEFENDANT in this complaint.

25. The language "shall" and "guaranteed" conspicuously set forth in the agreement by DEFENDANT indicates that DEFENDANT would absolutely performed its part of the Compromise Settlement Agreement

26. WHEREFORE, PLAINTIFF prays for judgment against DEFENDANT as follows:

1. For $195,000 in damages, including any amount for the amount for the breach of contract;

2. For interest

3. For reasonable attorney fees

4. For costs of suits and

5. Such other relief as the court may deem proper.

Dated 4-13-06

Submitted by;

Bonita P. Martinez

Bonita P. Martinez, Esq., SBN 153346
Attorney for Plaintiff, Carl Landers
304 Hawthorn Street
San Diego, CA 92101

# EXHIBIT A

ORIGINAL

ALAN D. BERSIN
United States Attorney
NITA L. STORMES
Assistant U.S. Attorney
California State Bar No. 096973
United States Courthouse
940 Front Street, Room 5152
San Diego, California 92101-8800
Telephone: (619) 557-5662

Attorneys for Defendant
United States of America

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARL W. LANDERS, Plaintiff, v. UNITED STATES OF AMERICA, Defendant. | Civil No. 92-1513-H(RBB) STIPULATION FOR COMPROMISE SETTLEMENT |

IT IS HEREBY STIPULATED by the Plaintiff Carl W. Landers, and the Defendant United States of America, that the above-entitled action, brought pursuant to the provisions of the Federal Tort Claims Act, 28 U.S.C. 1346(b), 2671 et seq., be settled and compromised, pursuant to 28 U.S.C. 2677, to preclude further claims and litigation by entry of an Order dismissing this action, pursuant to the following terms of the settlement, compromise and disposition of claims:

/ /

/ /

/ /

1. The Defendant, United States of America, makes the payments described below in full settlement and satisfaction of any and all claims for damages and demands which Plaintiff Carl W. Landers, his heirs, executors, administrators, assigns or any other person or entity now have or may hereafter acquire against the Defendant or any of its agents, servants or employees on account of the incident or circumstances giving rise to this lawsuit, namely the alleged medical malpractice arising out of Plaintiff's diagnosis and treatment for Crohn's colitis at the San Diego Veterans' Hospital, as more fully set forth in the First Amended Complaint.

2. This is a compromise settlement of disputed claims and demands which shall not constitute an admission of liability or fault by either of the parties or any of the Defendant's agents, servants or employees in connection with the incident.

3. As the cash component of this settlement, the United States of America shall pay to Plaintiff Carl W. Landers and his attorney a sum not to exceed Ninety Thousand Dollars ($90,000.00), from which sum Plaintiff shall pay his attorney's fees and costs of suit.

4. As the structured component of this settlement, the United States shall purchase from First Colony Life Insurance Company, an annuity that will result in a monthly payment of Six Hundred Dollars ($600.00) per month, commencing one month after funding of the settlement. These payments shall be payable for life, and are guaranteed for a period of twenty years certain, and shall be payable regardless of survivorship.

5. The United States of America shall issue a single United States Treasury check in an amount sufficient to pay the cash, and purchase the annuity contract referred to in paragraphs (3) and (4) above which check shall be made payable to JMW Settlements, Inc., Washington, D.C. Thereafter, JMW Settlements, Inc., as agent for the United States of America, will pursuant to disbursement instructions to be issued by counsel for the United States of America, use the proceeds of the Treasury check to purchase and fund the requisite annuity contract and to pay the cash component of the settlement ($90,000.00) by a check payable to Plaintiff Carl W. Landers and his attorney, Bonita P. Martinez, Esq. Any amount remaining after the above payments are made shall be returned to the United States Treasury.

6. Should Carl W. Landers die within twenty (20) years after the commencement date of the annuity, then his Estate shall be the beneficiary of the benefits described in Paragraph 4 above.

7. The payments described in Paragraph 4 of this Stipulation for Compromise Settlement shall commence 30 days after First Colony Life Insurance Company receives the check from the United States for the purchase of the annuity.

7(a). The annuity policy shall be owned by the United States of America. It is the intention of the parties that all payments hereunder constitute "damages received" on account of "personal injuries or sickness" within the meaning of Section 104(a)(2) of the Internal Revenue Code of 1986, as amended, and the Income Tax

/ /

/ /

Regulations thereunder through prosecution of a lawsuit based on tort or tort-type rights, or through a settlement agreement entered into in lieu of such prosecution.

7(b). The Defendant will own the annuity and not the Plaintiff, and neither Plaintiff nor his Estate will have any ownership rights in said annuity.

7(c). Neither Plaintiff nor his Estate shall have any right to accelerate, defer, increase, or decrease the amount of any payment to be made under this Stipulation. Neither Plaintiff nor his Estate is entitled to control the investment of any funds which are set aside to fund the payments required to be made pursuant to this Stipulation. Neither Plaintiff nor Plaintiff's estate shall have any ownership rights whatsoever, either actual or constructive, in the annuity described above.

8. There shall be paid to Bonita P. Martinez, as attorney's fees, a sum which constitutes not more than Twenty-five (25) percent of the final, total cost of this compromise settlement in accordance with 28 U.S.C. 2678. Attorneys fees shall be paid from and not in addition to the cash component of this settlement as described in Paragraph (3) above.

9. Payments of the cash sums described in Paragraph 3 above and payment to the First Colony Life Insurance Company in an amount necessary to purchase the annuity described herein, shall constitute a complete release from and bar to any and all causes of action, claims, rights, liens or subrogated interests, including those set forth in the First Amended complaint, known or unknown to the Plaintiff, and in whomsoever vested by reason of,

or arising from the circumstances more fully set forth in the First Amended Complaint; the Plaintiff agrees to indemnify, defend and save harmless the Defendant, United States of America, and/or its agents, servants, or employees from such causes of action, liens, rights or subrogated interests. In further consideration of the sums to be paid hereunder, Carl W. Landers, hereby releases and discharges any and all claims and causes of action of whatsoever nature arising out of the circumstances set forth in the First Amended Complaint.

10. The Plaintiff agrees that he will furnish Defendant a release or other satisfactory evidence of waiver of claim from any and all insurance companies and any and all other persons or organizations who have claimed to have subrogated or assigned claims arising out of or related to the subject matter of this suit.

/ /

/ /

/ /

/ /

/ /

/ /

/ /

/ /

/ /

/ /

/ /

/ /

11. Upon the payment of the cash component of this settlement and the funding of the annuity contract, Plaintiff and his attorney shall execute and deliver to the Defendant a document releasing Defendant from any and all claims against Defendant arising out of the actions and incidents described in the First Amended Complaint and a dismissal of the action with prejudice.

IT IS SO STIPULATED AND AGREED.

DATED: 3-24-94

CARL W. LANDERS
Plaintiff

DATED: 3-24-94

BONITA P. MARTINEZ

Attorney for Plaintiff

DATED: 3-29-94

ALAN D. BERSIN
United States Attorney

NITA L. STORMES
Assistant U.S. Attorney
Attorneys for Defendant
United States of America

# EXHIBIT B

**U.S. Department of Justice**

*United States Attorney*
*Southern District of California*

*United States Courthouse*
*940 Front Street, Room 5152*
*San Diego, California 92101-8800*

*NLS:jh*
*(610) 557-5662*
*FAX (619) 557-7122*

March 9, 1994

Bonita P. Martinez, Esq.
Second Floor
2067 First Avenue
San Diego, California 92101

Re: Carl W. Landers v. United States of America
Civil No. 92-1513-H(LSP)

Dear Ms. Martinez:

The purpose of this letter is to convey the United States' structured settlement offer in the above-captioned case. First, I would like to outline for you the rationale behind the settlement offer.

As you know, my position has always been that this case is defensible on the liability issue. I have had the case reviewed by three gastroenterologists, one pathologist, and one orthopedic surgeon, all of whom assure me that there was no deviation from the standard of care in prescribing and administering the drug Prednisone to Mr. Landers, or in monitoring his progress after his course of treatment.

Having practiced law in this area for over 14 years, however, I am well aware of the hazards of litigation. Additionally, I acknowledge that this particular case presents an extremely sympathetic and likeable Plaintiff who has experienced a truly devastating impairment. The fact that Mr. Landers faces a lifetime of physical difficulties, including possible shoulder replacements in addition to his hip replacements, weighs heavily in my making the following offer in settlement of this case.

The United States proposes to purchase a "structured settlement" on behalf of your client, which would provide him a lump sum cash payment of $70,000 from which attorneys fees and costs shall be paid; along with monthly payments of $600 per month for life, guaranteed for 20 years, commencing one month from the date of funding. The expected payout over the Plaintiff's lifetime would be $364,000.

The monthly income (tax-free) of $600 ($7,200 per year) when added to his Social Security and VA disability income brings Mr. Landers to an annual income level of almost $17,000. With an "up front" cash payment of $70,000, he would end up with a substantial sum even after attorneys fees and costs have been deducted.

I urge you and your client to weigh this matter very carefully. I have undertaken to provide what I believe to be a substantial, good faith offer, which factors in the hazards of trial for both parties. As we have previously discussed, to proceed to trial in this case will require a significant expenditure of money and time for your client which may well result in his recovering nothing on his claim.

I hope that, in view of these very significant risks, your client will accept our proposed offer. If the offer is not accepted on or before March 15, 1994, it will be deemed withdrawn.

I look forward to hearing from you.

Very truly yours,

ALAN D. BERSIN
United States Attorney

NITA L. STORMES
Assistant U.S. Attorney

**U.S. Department of Justice**

*United States Attorney*
*Southern District of California*

*United States Courthouse*
*940 Front Street, Room 5152*
*San Diego, California 92101-8800*

*NLS:jh*
*(619) 557-5662*
*FAX (619) 557-7122*

March 15, 1994

Bonita P. Martinez, Esq.
Second Floor
2067 First Avenue
San Diego, California 92101

Re: Carl W. Landers v. United States of America
Civil No. 92-1513-H(LSP)

Dear Bonnie:

This is to confirm our telephone conversation of yesterday concerning the United States' proposed structured settlement of the above-entitled case. You indicated that if the United States would increase the initial cash payment from $70,000.00 to $90,000.00 and if Kaiser's attorney agrees that Kaiser has no legal basis for asserting a lien for medical expenses against Plaintiff, then the United States' settlement offer is acceptable to Plaintiff.

I agreed to increase the cash payment to $90,000.00 if that will settle the case. Please let me know at your earliest opportunity whether you have resolved the lien issue with Kaiser to your satisfaction. I will then be in a position to draft the settlement agreement and lock-in the annuity rate with the insurance company.

I look forward to hearing from you on this in the near future.

Very truly yours,

ALAN D. BERSIN
United States Attorney

NITA L. STORMES
Assistant U.S. Attorney

# EXHIBIT C

FL 1-25
OCT 1994(R)

**DEPARTMENT OF VETERANS AFFAIRS**
Regional Office
2022 Camino del Rio North
San Diego CA 92108

SEP 2 1 1995
In Reply Refer To: 377/211A

C 30 274 626
LANDERS, Carl W.

Mr. Carl W. Landers
140 North 14th Street
Apt. 177
Ramona CA 92065

Dear Mr Landers

You have filed a "notice of disagreement" with our action. This is the first step in appealing to the Board of Veterans' Appeals (BVA). This letter and enclosures contain very important information concerning your appeal.

**Statement of the Case**

We have enclosed a "statement of the case," a summary of the law and evidence concerning your claim. This summary will help you to make the best argument to the BVA on why you think our decision should be changed.

**What You Need to Do**

To complete your appeal, you must file a formal appeal. We have enclosed VA Form 9, Appeal to the Board of Veterans' Appeals, which you may use to complete your appeal. We will gladly explain the form if you have questions. Your appeal should address:

- the benefit that you want
- the facts in the statement of the case with which you disagree; and
- the errors that you believe we made in applying the law.

**When You Need to Do It**

Unless the box below is checked, you must file your appeal with this office within 60 days from the date of this letter or within the remainder, if any, of the one-year period from the date of the letter notifying you of the action that you have appealed. **If we do not hear from you within this period, we will close your case.** If you need more time to file your appeal, you should request more time before the time limit for filing your appeal expires. See item 3 of the Instructions in VA Form 9, Appeal to Board of Veterans' Appeals.

**Hearings**

You may have a hearing before we send your case to the BVA. If you tell us that you want a hearing, we will arrange a time and a place for the hearing. VA will provide the hearing room, the hearing official, and a transcript of the hearing for the record. VA cannot pay any other expenses of the hearing. You may **also** have a hearing before the BVA, as noted on the enclosed VA Form 9, Appeal to Board of Veterans' Appeals. **Do not delay filing your appeal if you request a hearing. Your request for a hearing does not extend the time to file your appeal.**

**Representation**

If you do not have a representative, it is not too late to choose one. An accredited representative of a recognized service organization may represent you without charge. An attorney or an accredited agent may also represent you, and may charge you a fee for services related to your claim that he or she provides after a final decision of the BVA under certain circumstances. VA cannot pay fees of agents or attorneys. For more information on fees, see 38 U.S.C. § 5904. If an attorney or accredited agent charges a fee for services in connection with your claim before VA, the attorney or agent should file a copy of the fee agreement within 30 days after it is signed. The fee agreement should be filed at the following address: Counsel to the Chairman (01C3), Board of Veterans' Appeals, 810 Vermont Avenue, N.W., Washington, DC 20420.

**What We Will Do**

After we receive your appeal, we will send your case to the BVA in Washington, DC, for a decision. The BVA will base its decision on an independent review of the entire record, including the transcript of the hearing, if you have a hearing.

Sincerely yours,

G A MORRIS
Adjudication Officer

Enclosure(s): VA Form 9

cc: American Legion

**377/211A/B46/95262/c14626**

# EXHIBIT D

**DEPARTMENT OF VETERANS AFFAIRS**
**REGIONAL OFFICE**
**2022 CAMINO DEL RIO NORTH**
**SAN DIEGO CA 92108-1508**

JAN 2 7 1997

In Reply Refer To: 377/211C
C 30 274 626
LANDERS, Carl W

CARL W LANDERS
P O BOX 38
CANBY CA 96015

Dear Mr. Landers:

Your appeal is being certified to the Board of Veterans Appeals for disposition. This means that your records are being transferred to the Board in Washington, D.C., so that the Board can reach a decision on your appeal.

Appeals are considered by the board as promptly as possible, in docket order. Once the appeal has reached the Board of the Veterans Appeals, it takes several months to review it. The time it takes to complete this appellate review process will vary depending upon the current backlog at the Board.

If you requested to appear personally at a hearing before the Board of Veterans Appeals, you will receive further information by separate letter. If you want to appear personally and give testimony concerning your appeal and you have not already requested the hearing, in accordance with 38 CFR 20.1304 you must submit your request within 90 days of the date of this letter, or until the date that the Board issues a decision in your case, whichever comes first.

The time prescribed by 38 CFR 20.1304 within which you may submit additional evidence concerning the appeal, appoint a representative to represent you in your appeal to the Board, or change the representative you previously chose to represent you before the Board is also limited to 90 days from the date of this letter, or the date that the Board promulgates a decision in your case, which comes first.

Any new request to appoint or change representatives or for a hearing, or any additional evidence should not be submitted to this office, but should be mailed directly to the Board of Veterans Appeals (014), 810 Vermont Avenue, N.W., Washington, D.C., 20420.

As soon as the decision is made, the Board will notify you.

The State of California offers many benefits and services for veterans and their dependents which you may not be aware of. If you would like more information, please contact your local County Veterans Services office or call 1-800-952-5626.

C 30 274 626
Landers, Carl W

**If You Have Questions**

If you have any questions, call us toll-free by dialing 1-800-827-1000. Our TDD number for the hearing impaired is 1-800-829-4833. *If you call, please have this letter with you.*

Sincerely yours,

G. A. Morris

G. A. Morris
Adjudication Officer

cc: American Legion

B51/211C/cw4626/027

FL 1-25a.
MAY1990(R)

**U. S. Department of Veterans Affairs**

377/211A/B46/95262/cl4626

VA Regional Office
2022 El Camino del Rio North
San Diego CA 92108

C 30 274 626
LANDERS, Carl W.

**STATEMENT OF THE CASE**

**IN THE APPEAL**
**OF**
**Carl W. Landers**

**FROM THE DECISION OF THE**
**DEPARTMENT OF VETERANS AFFAIRS**

**NOTICE TO APPELLANT**:

This is not a decision on the appeal you have initiated. It is a "Statement of the Case" which the law requires us to furnish to help you in completing your appeal.

Please read the forwarding letter carefully, as well as the instructions on the enclosed appeal form. These explain your appeal rights and tell you what you must do to complete your appeal.

A copy of this "Statement of the Case" has been furnished your representative: American Legion

**ISSUE**:

The amount subject to Recoupment under 38 CFR 3.800.

**EVIDENCE**:

Copy of United States District Court Southern District of California (Civil No. 92-1513-H(RBB)) decision dated March 29, 1994, 6 pages..

Copy of Adverse Judgment Data Sheet for above United States District Court decision.

**ADJUDICATIVE ACTIONS:**

| | |
|---|---|
| 3-29-1994 | Date of judgment, settlement for $195,000.000 to veteran. |
| 12-8-1994 | Claimant notified of offset requirement and the amount subject to offset, $195,000.00, by VA letter. |
| 7-5-1995 | Claimant notified of decision. |
| 7-21-1995 | Notice of Disagreement received. |

**PERTINENT LAWS, REGULATIONS:**

Title 38 CFR, is the statutory law governing benefits administered by this Administration.

38 CFR 3.800 (a) (2) states "Where any person is awarded a judgment on or after December 1, 1962, against the United States in a civil action brought pursuant to 28 U.S.C. 1246(b), or enters into a settlement of compromise on or after December 1, 1962, under 28 U.S.C. 2672 or 2677, by reason of a disability, aggravation or death within the purview of this section, no compensation or indemnity compensation shall be paid to such person for any month beginning after the date of such judgment, settlement, or compromise on account of such disability, aggravation, or death becomes final until the total amount of benefits which would be paid except for this provision equals the total amount included in such judgment, settlement, or compromise. The provisions of this paragraph do not apply, however, to any portion of such compensation or dependency and indemnity compensation payable for any period preceding the end of the month in which such judgment, settlement, or compromise becomes final. (Authority: 38 U.S.C. 501(a))

**DECISION:**

1. The amount subject to Recoupment under 38 CFR 3.800 is $195,000.00..

**REASONS AND BASES:**

The veteran contends that nothing should be withheld because from the total award of $195,000.00, he received nothing; $90,000.00 was paid to his attorney and that the remainder of the settlement was used to purchase an annuity from First Colony Life Insurance Company of $600.00 per month for life, and are guaranteed for a period of twenty years certain. 38 CFR 3.800 (a) (2) requires the recovery of the "total amount included in such judgment, settlement, or compromise", this amount is $195,000.00

# EXHIBIT E

# BOARD OF VETERANS' APPEALS

**DEPARTMENT OF VETERANS AFFAIRS**
**WASHINGTON, DC 20420**

IN THE APPEAL OF
CARL W. LANDERS

C 30 274 626

DOCKET NO. 96-36 472 ) DATE NOV 20 1997
)
)

On appeal from the
Department of Veterans Affairs Regional Office in San Diego, California

THE ISSUE

Whether the full amount of $195,000 should be recouped from the appellant's award of disability compensation benefits pursuant to 38 U.S.C.A. § 1151.

REPRESENTATION

Appellant represented by: The American Legion

ATTORNEY FOR THE BOARD

D. P. Dean

## INTRODUCTION

The appellant had active service from December 1979 to December 1983, and from July 1984 to June 1987.

This matter comes to the Board of Veterans' Appeals (Board) from adjudicative determinations by the San Diego Regional Office (RO) of the Department of Veterans Affairs (VA).

## CONTENTIONS OF APPELLANT ON APPEAL

The appellant contends that it is unfair for VA to recoup the full amount of the $195,000 settlement of his Federal Tort Claims Act claim against the Government from his award of § 1151 disability compensation benefits. He states that the entire $90,000 cash payment portion of the settlement went to his attorney in payment of her fees and of the expenses incurred during litigation of the claim, and that the remaining $105,000 went to purchase an annuity which guarantees him $600 per month for the rest of his life. He emphasizes that, with the exception of the $600 per month payments, he has not actually received any settlement money from the Government.

## DECISION OF THE BOARD

The Board, in accordance with the provisions of 38 U.S.C.A. § 7104 (West 1991 & Supp. 1997), has reviewed and considered all of the evidence and material of record in the veteran's claims files. Based on its review of the relevant evidence in this matter, and for the following reasons and bases, it is the decision of the Board that the law requires that the full amount of $195,000 be recouped from the appellant's award of § 1151 disability benefits, and that his claim seeking a reduction or elimination of that recoupment is legally insufficient.

## FINDINGS OF FACT

1. The appellant has been awarded disability benefits under 38 U.S.C.A. § 1151 for avascular necrosis of both hips due to VA steroid treatments for nonservice-connected Crohn's disease.

2. In October 1991, he filed a claim under the Federal Tort Claims Act (FTCA), 28 U.S.C. § 1346(b), 2671 *et seq.*, seeking $6,000,000 from the Federal Government for allegedly negligent medical care received at a VA medical facility.

3. In March 1994, the appellant, his attorney, and representatives of the Government entered into a compromise agreement, pursuant to 28 U.S.C. § 2677, to settle the FTCA claim and ensuing litigation.

4. Under the March 1994 settlement provisions, the Federal Government issued a single check in the amount of $195,000 in full settlement of the claim.

5. By rating decision in May 1995, compensation was awarded the appellant under 38 U.S.C.A. § 1151 for additional disability, avascular necrosis of both hips, resulting from VA medical treatment.

## CONCLUSION OF LAW

The full settlement amount of $195,000 must be recouped from the appellant's award of 38 U.S.C.A. § 1151 disability benefits. 38 U.S.C.A. § 1151(West 1991); 38 C.F.R. § 3.800(a)(2) (1996).

## REASONS AND BASES FOR FINDINGS AND CONCLUSION

38 U.S.C.A. § 1151 (West 1991) provides for the payment to qualified claimants of disability compensation benefits for additional disability resulting from VA medical treatment.

It is further provided in that statute that:

> Where an individual [who has been awarded § 1151 benefits] is, on or after December 1, 1962, awarded a judgment against the United States in a civil action brought pursuant to section 1346(b) of title 28 [of the United States Code] or, on or after December 1, 1962, enters into a settlement or compromise under section 2672 or 2677 of title 28 by reason of a disability...treated pursuant to this section [i.e., 38 U.S.C.A. § 1151] as if it were service-connected, then no benefits shall be paid to such individual for any month beginning after the date such judgment, settlement, or compromise on account of such disability...becomes final until the aggregate amount of benefits which would be paid but for this sentence equals the **total amount** included in such judgment, settlement, or compromise. (Emphasis added).

Likewise, it is provided at 38 C.F.R. § 3.800(a)(2) that:

> Where any person is awarded a judgment on or after December 1, 1962, against the United States in a civil action brought pursuant to 28 U.S.C. 1346(b), or enters into a settlement or compromise on or after December 1, 1962, under 28 U.S.C. 2672 or 2677, by reason of disability...within the purview of this section [*i.e.*, 38 U.S.C.A. § 1151], no compensation...shall be paid to such person for any month beginning after the date such...settlement, or compromise on account of any such disability...becomes final until the total amount of benefits which would be paid except for this provision

equals the **total amount** included in such...settlement, or compromise. (Emphasis added).

By rating action in May 1995, the RO granted disability compensation benefits under 38 U.S.C.A. § 1151 to the appellant for avascular necrosis of both hips due to steroid therapy administered by VA for nonservice-connected Crohn's disease. However, before payment of any of these benefits to the appellant could commence, it was first necessary to recoup the **total amount** earlier disbursed by the Government in settlement of a FTCA claim filed by the appellant in October 1991 seeking civil damages for the same disability.

In the October 1991 FTCA claim, the appellant sought the sum of $6,000,000 from the Government due to alleged negligent medical treatment and failure of informed consent which allegedly resulted in avascular necrosis of both hips. In March 1994, the appellant, his attorney, and representatives of the Government signed a Stipulation for Compromise Settlement pursuant to 28 U.S.C. 2677, which provided for the payment of up to $90,000 in cash to the appellant, out of which he would pay his costs and attorney's fees; and an additional sum for the purchase of an annuity which would provide the appellant a monthly income of $600 for life. It was further stipulated that the Government would issue a single check in an amount sufficient to satisfy the settlement agreement to a corporate settlement agent who would then disburse the funds as provided in the settlement agreement.

The evidence of record establishes, and the appellant does not dispute, that the Government subsequently issued a single check in the amount of $195,000 in full settlement of the civil claim by the appellant. Under the statutory provision quoted above in this decision, and under the corresponding applicable regulation, the **total amount** of $195,000 is subject to recoupment from the appellant's award of VA compensation benefits under 38 U.S.C.A. § 1151 before payments to him of those benefits can commence. The controlling law and regulation are quite specific on this point, and there is no legal authority for any exception in the present case.

The disbursements reportedly paid to the appellant's attorney from the $90,000 cash payment may or may not be excessive, and he may or may not have recourse to

further legal remedies against her if her fees and claimed expenses are excessive, but these factors cannot change the outcome in the present appeal.

In cases such as this, where the law is dispositive, the claim should be denied because of the absence of legal merit. *Sabonis v. Brown*, 6 Vet. App. 426 (1994). Accordingly, the appeal is denied.

ORDER

The appeal is denied.

J.F. GOUGH
Member, Board of Veterans' Appeals

NOTICE OF APPELLATE RIGHTS: Under 38 U.S.C.A. § 7266 (West 1991 & Supp. 1997), a decision of the Board of Veterans' Appeals granting less than the complete benefit, or benefits, sought on appeal is appealable to the United States Court of Veterans Appeals within 120 days from the date of mailing of notice of the decision, provided that a Notice of Disagreement concerning an issue which was before the Board was filed with the agency of original jurisdiction on or after November 18, 1988. Veterans' Judicial Review Act, Pub. L. No. 100-687, § 402, 102 Stat. 4105, 4122 (1988). The date which appears on the face of this decision constitutes the date of mailing and the copy of this decision which you have received is your notice of the action taken on your appeal by the Board of Veterans' Appeals.

# EXHIBIT F

DEPARTMENT OF VETERANS AFFAIRS
Office of the General Counsel
Washington DC 20420

June 18, 2004

In Reply Refer To:
021:CFB

Mr. Carl Wayne Landers
1303 S. Jefferson Street
Kaufman, Texas 75142

Dear Mr. Landers:

We have been asked by Senator Kay Bailey Hutchison to respond to the concerns you raised in your letter dated January 8, 2004, concerning the terms for the settlement of your tort litigation in 1994.

Enclosed is a copy of the Stipulation for Compromise Settlement, which both you and your attorney signed on March 24, 1994. The Stipulation states that you agreed to release all claims against the United States related to your treatment in 1990 for Crohn's disease in Department of Veterans Affairs (VA) facilities in return for $90,000 payable by check to both you and your attorney and an annuity which would pay you $600 monthly for the rest of your life, with payments guaranteed to be made for 20 years. If you do not survive the full 20 years, the remaining guaranteed payments will be made to your estate.

Paragraph 3 of the Stipulation provides that attorney's fees and costs of suit were to be paid from the $90,000 portion of the settlement. The Federal Tort Claims Act limits the attorney's fee to 25 percent of the total settlement. In this case, the annuity cost $105,000 and the up-front payment was $90,000, so the attorney's fee could not exceed $48,750. After payment of the attorney's fee from the up-front payment, $41,250 remained from which the costs of suit were paid. We also understand that some of that money was paid by your attorney to Kaiser Permanente to satisfy a medical expense lien. Any cash remaining after those payments were made should have been distributed to you. The total amount paid by the United States under the settlement was $195,000.

Effective November 5, 1990, VA has awarded you compensation benefits for conditions that related to your medical care in 1990. Those benefits were awarded under 38 U.S.C. § 1151 which provides that compensation awarded under that section shall be withheld until the total amount of benefits that would be paid under that statute equals the total amount included in the tort litigation settlement, in your case, $195,000. Currently, your compensation award totals $2,239 monthly of which $1,422 is being withheld as required by the statute. If your compensation rate does not change, the total amount of the settlement should be recouped by July 2008. Because the withholding is mandated by the statute, VA cannot waive the debt or alter the amount

withheld. The monthly payment of $600 you receive under the tort claim settlement will continue for the rest of your life or for 20 years, whichever is longer.

We trust this fully answers your questions concerning the settlement and your VA compensation benefits.

Sincerely yours,

Thompson
for Tim S. McClain
General Counsel

Enclosure

**DEPARTMENT OF VETERANS AFFAIRS**
**Office of the General Counsel**
**Washington DC 20420**

In Reply Refer To:
021:CFB

The Honorable Kay Bailey Hutchinson
United States Senator
145 Duncan Drive, Suite 120
San Antonio, Texas 78226

Dear Senator Hutchinson:

This is in response to your recent inquiry on behalf of your constituent, Carl Wayne Landers.

On September 30, 1992, Mr. Landers, by his attorney, filed a claim for damages under the Federal Tort Claims Act in the U.S. District Court for the Southern District of California. The claim was settled with a Stipulation for Compromise Settlement, which was signed by both Mr. Landers and his attorney on March 24, 1994. The Stipulation states that Mr. Landers agreed to release all claims against the United States related to his 1990 treatment for Crohn's disease in Department of Veterans Affairs (VA) facilities. Under the terms of the settlement, in consideration for his release of all claims, he received $90,000 payable by check to him and his attorney and an annuity which would pay Mr. Landers $600 monthly for the rest of his life, with payments guaranteed to be made for 20 years. If he does not survive the full 20 years, the remaining guaranteed payments will be made to his estate.

Paragraph 3 of the Stipulation provides that attorney's fees and costs of suit were to be paid from the $90,000 portion of the settlement. The Federal Tort Claims Act limits the attorney's fee to 25 percent of the total settlement. In this case, the annuity cost $105,000 and the up-front payment was $90,000, so the attorney's fee could not exceed $48,750. After payment of the attorney's fee from the up-front payment, $41,250 remained from which the costs of suit were to be paid. We also understand that some of that money was paid by Mr. Landers' attorney to Kaiser Permanente to satisfy a medical expense lien. Any cash remaining after those payments were made should have been distributed to Mr. Landers. The total amount paid by the United States under the settlement was $195,000.

Effective November 5, 1990, VA awarded Mr. Landers compensation benefits for conditions that related to his medical care in 1990. Those benefits were awarded under 38 U.S.C. § 1151 which provides that compensation awarded under that section shall be withheld until the total amount of benefits that would be paid under the statute equals the total amount included in the tort litigation settlement; in this case, $195,000. Currently, his compensation award, which includes an amount for conditions related to his military service other than those arising from his 1990 medical care for Crohn's

disease, totals $2,299 monthly. Of that amount, the $1,460 awarded under § 1151 is being withheld as required by the statute. If his compensation rate does not change, the total amount of the settlement should be recouped by June 2008 at which time his full benefits will resume. Because the withholding is mandated by the statute, VA cannot waive the debt or alter the amount withheld. The monthly payment of $600 Mr. Landers receives under the tort claim settlement will be paid for 20 years or for the rest of his life, whichever is longer.

We trust this fully answers your questions concerning the settlement and Mr. Landers' VA compensation benefits. Thank you for your interest in our nation's veterans.

Sincerely yours,

Tim S. McClain

Tim S. McClain
General Counsel

From: Carl Wayne Landers
File No. 30274626
Re: Recoupment of money from annuity
Date: January 08, 2004
Attn: Office of Senator Kay Bailey Hutchison

To Whom It May Concern,

This is a request to review the contract made with me 03-1994 in San Diego, Ca. The contract was to amend my compensation with a $600.00 a month for a guarantee for 20 years or continue after that for the duration of my life in addition to any compensation for which I am entitled to. The agreed contract was made out of court with the U S Attorney and my attorney along with myself. The agreement was that the Federal Government was to pay my attorney fees and pay me the $600.00 a month starting on April 25, 1994 and to continue for a guaranteed 20 years (March 25,2014). If I should decease before this date it would continue to be paid toward my estate until this date. If I am still living after this date it would continue until my death, at which it would stop upon my demise. At no time was the statement made or was there papers signed to the state that there was going to be a recoupment made against the settlement. It was later I was told that the attorney fees would be recouped because they issued a check for $90,000 to my attorney with my name along with her name on the check. It was not until July 1995 that I received a letter stating that I had been overpaid by $195,000. They explained that it included the $90,000 paid to my attorney and the $105,000 put up in an annuity for which I was to receive $600.00 for life. To date they show a current balance of $77,366. The problem with this whole deal is the money paid for the annuity does not belong to me yet they are taking the money back at a rate of $1422.00 per month against my VA disability compensation check. The total to date above the attorney fees that has been recouped is $27,634 for a total recoupment of $117,634. This leaves $817.00 per month plus the $600.00 a month, which I receive. The money for the annuity did not go through my hands nor was I given a lump sum option. The attorney I spoke with about this told me the money had to be paid to me directly or the ownership of the annuity had to be part of my estate for it to be included in the recoupment of the above overpayment. None of this was done. The papers state that the ownership of the annuity is the U.S. of America for which the annuity reverts back to them at my death. The only legal recoupment of funds is that of the attorney fees paid (90,000).

I have contacted Veteran Service Organizations and they all told me that they had never saw an 1151 tort claim even close to this. The veteran is suppose to benefit from the settlement rather than suffer worse than before the settlement was brought forth. Anyone who can purchase an annuity to pay out a settlement made out of court and recoupe the money they put up for the annuity back from the plaintiff, then get back the annuity upon death of the recipient should be brought to justice. This means that the U. S. of America is getting the money back then they get it a second time, which means they double their investment. I think the whole world would enjoy investing money in this manner for you guarantee doubling your money without any risk as they would in the stock market.

Carl W. Landers

# EXHIBIT G

DEPARTMENT OF VETERANS AFFAIRS
VA Regional Office
One Veterans Plaza
701 Clay Avenue
Waco TX 76799

October 24, 2003

In Reply Refer To: 349/241C12
C# 30 274 626
LANDERS, Carl W.

CARL W. LANDERS
1303 S. JEFFERSON ST.
KAUFMAN TX 75142

Dear Mr. Landers:

We are unable to consider your request for waiver of money being recouped from your tort claim as this recoupment cannot be waived. Please see enclosed Board of Veterans' Appeals decision dated November 20, 1997.

We regret that we are unable to grant your request.

Sincerely yours,

CAROL DANSBY
Chairperson, Committee on Waivers

Enclosures: Board of Veterans' Appeals Decision

PHOTOCOPY VARO WACO